(Del. Rev.12/98)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Mikhail Mazin

_____
(Name of Plaintiff or Plaintiffs)

v.                                    CIVIL ACTION NO. _07 - 81_

Delaware Department of Health,
Mr. Steinberg

_____
(Name of Defendant or Defendants)

## COMPLAINT

1.  This action is brought pursuant to _Federal and Delaware Medicare/Medicail Law._
    (Federal statute on which action is based)

    for discrimination related to _burenes to pay for Attorney_ jurisdiction exists by virtue of
    (In what area did discrimination occur? e.g. race, sex, religion)

    _US Constitusion (" Equality before the law")._
    (Federal statute on which jurisdiction is based)

2.  Plaintiff resides at _8314  Society  DR_
    (Street Address)
    _Claymont_, _Newcastle_, _DE_  _19703_
    (City)      (County)      (State)    (Zip Code)
    _(302) 529 - 7792_
    (Area Code) (Phone Number)

3.  Defendant resides at, or its business is located at _Mr. Steinberg , Lewis Building_
    (Street Address)
    _Herman Halloway Campus, 1901 N. DuPont HWY, New Castle, DE 19702_
    (City)         (County)        (State)          (Zip Code)

4.  The alleged discriminatory acts occurred on _05_, _18_, _06_, and
    (Day)      (Month)      (Year)
    _06_ , _10_ , _06._

5.  The alleged discriminatory practice ☑ is  ☐ is not continuing.

6.    Plaintiff(s) filed charges with the ___DDMS , Mr. Steinberg___
                                                (Agency)

Lewis Building, Herman Halloway Campus, 1901 N. DuPont HWY, New Castle,
        (Street Address)         (City)              (County)        (State) (Zip)
                                                                            DE 19702
regarding defendant(s) alleged discriminatory conduct on: ___05.18.06 and 06.18.06___
                                                                    (Date)

7.    Attach decision of the agency which investigated the charges referred in paragraph 6 above.

8.    Was an appeal taken from the agency's decision?    Yes ☑    No ☐

      If yes, to whom was the appeal taken? ___Superior Court, Supreme Court, DE___

9.    The discriminatory acts alleged in this suit concern: (Describe facts on additional sheets if

necessary)    ___See applied sheet.___

_____

_____

_____

_____

_____

_____

10.                Defendant's conduct is discriminatory with respect to the following:    None be llow

      A.    ☐    Plaintiff's race

      B.    ☐    Plaintiff's color

      C.    ☐    Plaintiff's sex

      D.    ☐    Plaintiff's religion

      E.    ☐    Plaintiff's national origin

11.    Plaintiff prays for the following relief:    (Indicate the exact relief requested)

I ask for the Court to

restore my Medicaid

_____

_____

_____

_____

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated:  02 . 03 . 07

Mikhail Mazin

(Signature of Plaintiff)

# COMPLAINT

0 7 – 8 1

I've had disability and Medicaid since 1994. At March 2005, I resigned. At February 3, 2006, to reduce benefits, Medicaid/QMB Unit (hereafter Unit) of Delaware Department of Health and Social Services (hereafter DDHS) stopped my Medicaid, sending me tree-line letter (Appendix E, page 17, hereafter Appendix E, p. 17). I asked for a hearing. At April 27, 2006, DDHS Hearing Officer (#1) Mr. Water made decision in my favor (pp. Appendix D, 13-15). DDHS held new hearing. At July 10, 2006, Hearing Officer (#2) Mr. Steinberg made opposite decision (Appendix F, pp. 21-23).

At August 4, 2006, I appealed to Delaware Superior Court. At August 29, 2006, the Court dismissed my Appeal in two-line resolution (Appendix C, p. 10); the Court didn't ask any papers and didn't give explanation (pp. 9-12). At September 29, 2006, I appealed to Delaware Supreme Court. At November 6, 2006, I brought to the Court Brief and Appendixes.

At December 6, 2006, the Court Deputy Attorney signed **asking by DDHS** notice to dismiss my appeal (p. 8); the notice **justified Superior Court** colleague (pp. 5-8). It looks strange, because according US Constitution, executive (DDMS) and juridical branches of power **are separated**. At December 12, 2006, the Court dismissed my Appeal because I brought Notice of Appeal one day late (Appendix B, pp. 2-3) while I did everything what the Court Secretariat asked me to do (Appendix B, p. 4). At December 19, 2006, I appealed this decision. At January 5, 2007, my appeal was dismissed (Appendix A, p. 1).

**FREE LEGAL SERVICE DOESN'T WORK IN MY CASE. BOTH DELAWARE SUPERIOR AND SUPREME COURTS DIDN'T TOUCH MY ARGUMENTS: I EXAMINED 13 FEDERAL AND DELAWARE MEDICARE/MEDICAID LAWS THAT, I THINK, MR. STEINBERG AND DDMS BROKE (Appendixes H, I, pp. 25-33). I RESPECTUALLY CAN'T AGREE WITH THIS APPROACH.**

At January 8, 2007, I tried to appeal to US District Court for Delaware. The Court Officer recommended me appealing to Supreme Court of US. I called there. They directed me to US Court of Appeal for 3rd Circuit. I left them three messages for a week; nobody called me back. I came back to US District Court. They called to US Supreme Court, explained my situation, and (thanks to Secretariat) asked to send me the Guide and forms. Supreme Court of US Guide was very useful. There are two reasons to apply to US District Court:

a. Mr. Water refers to US District Court order for resembling case (Appendix D, p.14);

b. to apply to US Supreme Court, Guide asks to send to US District Court decision.

When I found out this, at February 2, 2007, I came to US District Court again to ask taking my case. At the Secretariat, I was told that the Court can do so and has no definite deadline to appeal for my case.

Mikhail Muzia

07 - 8 1

1

## To United States District Court
## District of Delaware

## APPEAL

# I. Introduction.

I've had disability and Medicaid since 1994. At March 2005, I resigned. At February 3, 2006, to reduce benefits, Medicaid/QMB Unit (hereafter Unit) of Delaware Department of Health and Social Services (hereafter DDHS) stopped my Medicaid, sending me tree-line letter (Appendix E, page 17, hereafter Appendix E, p. 17). I asked for a hearing. At April 27, 2006, DDHS Hearing Officer (#1) Mr. Water made decision in my favor (pp. Appendix D, 13-15). DDHS held new hearing. At July 10, 2006, Hearing Officer (#2) Mr. Steinberg made opposite decision (Appendix F, pp. 21-23).

At August 4, 2006, I appealed to Delaware Superior Court. At August 29, 2006, the Court dismissed my Appeal in two-line resolution (Appendix C, p. 10); the Court didn't ask any papers and didn't give explanation (pp. 9-12). At September 29, 2006, I appealed to Delaware Supreme Court. At November 6, 2006, I brought to the Court Brief and Appendixes At December 6, 2006, the Court Deputy Attorney signed asking by DDHS notice to dismiss my appeal (p. 8); the notice justified Superior Court colleague (pp. 5-8). It looks strange, because according US Constitution, executive (DDMS) and juridical branches of power separated. At December 12, 2006, the Court dismissed my Appeal because I brought Notice of Appeal one day late (Appendix B, pp. 2-3) while I did everything what the Court Secretariat asked me to do (Appendix B, p. 4). At December 19, 2006, I appealed this decision. At January 5, 2007, my appeal was dismissed (Appendix A, p. 1).

**BOTH DELAWARE SUPERIOR AND SUPREME COURTS DIDN'T TOUCH MY ARGUMENTS: I EXAMINED THERE 13 FEDERAL AND DELAWARE MEDICARE/MEDICAID LAWS THAT, I THINK, MR. STEINBERG AND DDMS BROKE (Appendixes H, I, pp. 25-33). I RESPECTUALLY CAN'T AGREE WITH THIS APPROACH.**

At January 8, 2007, I tried to appeal to US District Court for Delaware. The Court Officer recommended me appealing to Supreme Court of US. I called there. They directed me to US Court of Appeal for 3rd Circuit. I left them three messages for a week; nobody called me back. I came back to US District Court. They called to US Supreme Court, explained my situation, and (thanks to Secretariat) asked to send me the Guide and forms. Supreme Court of US Guide was very useful. There are two reasons to apply to US District Court:
a. Mr. Water refers to US District Court order for resembling case (Appendix D, p.14);
b. to apply to US Supreme Court, Guide asks to send to US District Court decision.

When I found out this, at February 2, 2007, I came to US District Court again to ask taking my case. At the Secretariat, I was told that the Court can do so and has no definite deadline to appeal for my case.

## II. My Arguments.

I think, Mr. Steinberg

a. ignored Mr. Water's decision;

b. violated low holding Hearing #2;

c. violated low proving my ineligibility for Medicaid;

d. used wrong determination of my eligibility for Medicaid.

## a. Mr. Water's decision.

1. Mr. Water listed laws and rules that Unit broke (Appendix D, pp. 13-15, hereafter pp. 13-15). He wrote (p.14): "The Delaware rules [Cod of Delaware Regulation, v. V, 2006 (hereafter CDR)] at 5301 of the Division of Social Services Manual incorporated the provisions of the Court's order." 5301 4) states (p. 28): **"At a minimum all notices will:**

b) **Provide citation(s) to the regulation(s) supporting the action**...

c) **Provide a detail individualized explanation** of the reason(s) for the action...

d) If calculation of income...are involved, set forth the calculations used by agency **including any disregard...used in the calculations..."**

2. Mr. Water cited (p.14): "Due process requires that claimant facing termination of public assistance must be given 'adequate notice detailing the reasons for a proposed determination...' Such notice is necessary **to protect claimants against proposed agency action 'resting on incorrect or misleading factual premises or on misapplication of or policies to the facts of particular cases.' "**

Unit changed none in second letter (p. 24, compare with first letter, p. 17).

## b. Hearing #2.

3. 5405 5) states (p. 30): "...decision of hearing officer is **the final decision of agency."** It couldn't be two or more **FINAL** decision. 5500 states (p. 31): **"The decision of the hearing officer is binding on the Department of Health and Social Services**."

3

4. Mr. Steinberg told that he didn't read Mr. Water's decision. From very beginning, I felt that Mr. Steinberg made decision before he came in the room, and it didn't matter what I told. Hearing was held in rush manner that broke 5405 2) (p. 29). I was many times interrupted that broke 5405 2) and 5404 5) (p. 29); last one states: "Advance **any arguments without interference.**" I wasn't allowed to say both Opening and Closing remarks; it broke 5405 3) (p. 30). I was allowed to ask to Unit representative only one of six very short and very concretized questions; it broke 5404 6) (p. 29).

## c. Way to prove my ineligibility for Medicaid.

5. At the Hearing #2, there was one the document to discuss: the Summary, and one goal: to decide if Unit took right decision **within the Summary**. It's two laws applied to the Summary: 17130 1619 (b) and 17130.1 (pp. 18-19). Mr. Steinberg referred to 1619 (b) (pp. 22-23). But he added **some additional** laws to decision, to proof my ineligibility for Medicaid. It turned Mr. Steinberg from **Hearing Officer** at **Fair** Hearing to **Defender Attorney**. I think it was **COMPLETELY INADMISSIBLE.**

6. First additional law, 13436 (p.35), states: "…severely disable individuals…go back **on SSI** to assure Medicaid coverage." It's not my case.

7. Next one is 17300 (p. 37). Mr. Steinberg referred to second paragraph: "QMB qualified for **Medicaid** to pay for their Medicare Part A and B premiums, deductibles, and co-insurance expenses. They do not receive any Medicaid services." It's not clear formulation because first sentence contradicts second one. Section 13000 "…Medicaid Overview," 13444 (p. 32) formulates the idea clearer: "Effective January 1, 1990, Delaware will pay the Part A and B Medicare premiums, deductibles, and co-insurance for **Medicare beneficiaries** with income not exceeded 100% of Federal Power Level **[FPL]" (not SSI)**.

8. Next one is 4003 (p. 34) used to prove that "[it did me] ineligible to receive any kind of Medicaid." (p. 23). I brought this low to Mr. Steinberg to the Hearing with only goal: to show that…countable income [should compute] **less disregard…**[and] **should be documented in the case record.**" There is no a word **about ineligibility for Medicaid**.

9. Final one is CDR 16200.4 (p. 36) related to "…adult age 19 or over…Retired Military…" etc. I don't belong to these categories.

10. So, even additional lows can't prove my ineligibility for Medicaid.

## d. My eligibility for Medicaid.

4

11. Mr. Steinberg referred to 1619 (b) (pp. 22-23). It states (p. 18): "Disable individuals who lose their financial eligibility for **SSI due to obtaining employment...**" My case is opposite: **obtaining Social Security, Medicare, and pension since 2005, having disability and Medicaid** since 1994. According law, these factors determine my eligibility for Medicaid.

12. Mr. Steinberg and Unit broke Federal Medicaid and Medicare Guide, 2006 (FMMG) 14,245 (p. 25), CDR 5100 (p. 27), 13610 (p. 33), 13520 (p. 32). Last one states: "The State Office Administrative Staff is responsible that the Medicaid program **meets Federal and State rules and regulation.**"

13. FMMG 14245, 14731 (pp. 25-26), and CDR 13444 (p. 32) set Medicare beneficiary income **at 100% FPL (NOT SSI).** 14245 (p. 25) states: "...[Medicare] beneficiaries [who] have income at or bellow of FPL and resources less than **twice the limit for SSI disability benefits** in addition the Medicare cost sharing are **entitled to full Medicaid benefits.**" For 2006, the limit should be **$603 x 2 = $1206.** My income in 2006 was **$653** (p. 20) **minus disregard** (CDR 4003, p. 34).

## III. CONCLUSION.

I think Mr. Steinberg low violation is obvious. Last year were very stressful for me. Especially considering, that since last August, I've had severe 11 months therapy. Some days, I can do almost nothing.

**My experience showed that if you have no money for attorney, there is no or slim chances that your arguments would be read, undependably how strong they were. I think it's very unfair.**

Unit serves the customers who are mostly pour, elderly, disable, not enough educated, not experienced in searching laws, and not enough understood juridical language to do what they have to. **I don't want somebody to repeat my stressful way, or, even worse, to have no idea about his or her options.**

Mikhail Mazin

# APPENDIXES

Appendix A. Delaware Supreme Court Orders (#2) and my letter to clerk          pp.      1

Appendix B. Delaware Supreme Order (#1) and four pages from Appellee's
Answering Brief Deputy Attorney General                                        pp.     2-8

Appendix C. Delaware Superior Court Decision                                   pp.    9-12

Appendix D. DMMA Hearing Officer (#1) Mr. Water decision                        pp. 13-15

Appendix E. Five pages of Hearing (#1) Summary                                 pp. 16-20

Appendix F. DMMA Hearing Officer #2 Mr. Steinberg decision                     pp. 21-23

Appendix G. One pages of Hearing #2 Summary                                    p.      24

Appendix H. Federal Medicare and Medicaid Guide, v. IV, 2006

  1. 14245                                                                      p.      25
  2. 14731                                                                      p.      26

Appendix I. Cod of Delaware Regulation, v. V, 2006

  1.  5100                                                                      p.      27
  2.  5301                                                                      pp. 27-28
  3.  5404                                                                      p.      29
  4.  5405                                                                      pp. 29-30
  5.  5500                                                                      p.      31
  6. 13444                                                                      p.      32
  7. 13446                                                                      p.      32
  8. 13520                                                                      pp. 32-33
  9. 13610                                                                      p.      33
  10. 17130 1619 (b)                                                            p.      18
  11. 17130.1                                                                   p.      19

Lows, added by Mr. Steinberg to his decision

  1.  4003                                                                      p.      34
  2. 13436                                                                      p.      35
  3. 16220.4                                                                    p.      36
  4. 17300                                                                      p.      33

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MIKHAIL MAZIN, | § | |
| | § | No. 533, 2006 |
| Plaintiff Below- | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | in and for New Castle County |
| DELAWARE DEPARTMENT OF | § | C.A. No. 06A-08-001 |
| HEALTH & SOCIAL SERVICES | § | |
| and MR. STEINBERG, | § | |
| | § | |
| Defendants Below- | § | |
| Appellees. | § | |

Submitted: December 21, 2006
Decided:    January 5, 2007

Before **BERGER, JACOBS** and **RIDGELY**, Justices

### O R D E R

This 5th day of January 2007, the Court having considered the appellant's motion for reargument pursuant to Supreme Court Rule 18, and it appearing that the motion is without merit,

NOW, THEREFORE, IT IS ORDERED that the appellant's motion is DENIED.

BY THE COURT:

_____
Justice

**EFiled: Dec 12 2006 2:55PM**
**Filing ID 13170937**
**Case Number 533,2006**

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| MIKHAIL MAZIN, | § |
| | § No. 533, 2006 |
| Plaintiff Below- | § |
| Appellant, | § |
| | § Court Below—Superior Court |
| v. | § of the State of Delaware |
| | § in and for New Castle County |
| DELAWARE DEPARTMENT OF | § C.A. No. 06A-08-001 |
| HEALTH & SOCIAL SERVICES | § |
| and MR. STEINBERG, | § |
| | § |
| Defendants Below- | § |
| Appellees. | § |

Submitted: November 8, 2006
Decided:   December 12, 2006

Before **BERGER**, **JACOBS** and **RIDGELY**, Justices.

### O R D E R

This 12th day of December 2006, upon consideration of the appellant's

untimely notice of appeal,[1] the notice to show cause issued by the Clerk, and

the appellant's response thereto, it appears that the appellant's failure to

timely file his appeal is not attributable to court-related personnel.[2]

Accordingly, this Court does not have jurisdiction to hear this untimely

appeal.

---

[1] The appellant filed his appeal from the Superior Court's August 29, 2006 order on September 29, 2006, which was one day late. Supr. Ct. R. 6.

[2] *Bey v. State,* 402 A.2d 362, 363 (Del. 1979). The appellant's November 4, 2006 letter in response to the notice to show cause appears to attribute his late filing to his pro se status rather than to the actions of court-related personnel.

**3**

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme

Court Rules 6 and 29(b), the within appeal is DISMISSED.

BY THE COURT:

/s/ Jack B. Jacobs
Justice

November 4, 2006

Dear Ms. Howard:

Yesterday, I received two letters:

1.Post Office Slip that I needed to get letter;

2.LexisNexis copy of your letter from October 24, 2006 (I send copy of it).

Thanks P/O, I got first letter today.

Firstly, I almost sure, that you received my letter from October 20, 2006. Just in case, I send copy of the letter from 10.20.06.

Secondly, you mentioned in your letter Supreme Court Rule 29(b) and referred to October 2, 2006 letter, signed by Ms. DeJarnette. When I received this and other letter from the same date, signed by Ms. DeJarnette I went to Supreme Court Wilmington branch Secretariat and ask them about the letters. I also shown them Notice of Appeal and Opening Brief and Appendixes.

I was told that deadline October 23, 2006 was **only for Defendants.** It was only deadline for me: November 13, 2006.

So, I send you the Notice, and at Monday, November 6 will go to Supreme Court Secretariat to give them Opening Brief and Appendixes.

Sincerely,

Mikhail Mazin

*5*

## ARGUMENT

I.   THE SUPERIOR PROPERLY DISMISSED MR. MAZIN'S APPEAL
     FROM THE ADMINISTRATIVE HEARING OFFICER'S DECISION.

### A.   Standard and Scope of Review

The Court will review this case under an abuse of discretion standard.  *Downes v. State*, 623 A.2d 1142 (Table), 1993 WL 102547 (Del.Supr.)(Exhibit A).  "An abuse of discretion occurs when 'a court has $\cdots$ exceeded the bounds of reason in view of the circumstances, [or] $\cdots$ so ignored recognized rules of law or practice so as to produce injustice.' " *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994) (quoting *Firestone Tire & Rubber Co. v. Adams*, 541 A.2d 567, 570 (Del. 1988)).

B.   The Superior Court did not abuse its discretion
when it dismissed Mr. Mazin's appeal because the appeal failed
to meet the requirements of Superior Court Civil Rule 72 in
that it contained no grounds of the appeal.

#### 1.   Introduction

##### 1619(b) Medicaid

The 1619(b) Medicaid program described in the DHSS Statement of Facts is codified at 42 U.S.C. §1382h(b)(1).  This federal statute authorizes Medicaid coverage by a state for persons who lose their eligibility for supplemental security income ("SSI"), provided that the federal Commissioner of Social Security makes certain findings pursuant to regulations of the Social Security Administrations.  The regulations are codified at 20 C.F.R. §§416.264-269.  States are required to provide 1619(b) Medicaid coverage as part of their state plans.  42 C.F.R. §435.120.

While the federal Commissioner makes eligibility determinations for 1619(b) Medicaid coverage, states administer the 1619(b) program, as they

5

**6**

do all other types Medicaid programs. A state's administration of the 1619(b) program includes the provision of a fair hearing system. 42 C.F.R. §§431.200-246.

The State of Delaware has promulgated regulations for the administration of 1619(b) Medicaid. The regulations are published in the Delaware Social Services Manual ("DSSM") at 17130 and 17130.2.

## Qualified Medicare Beneficiary

The status as a qualified Medicare beneficiary, or QMB, described in the DHSS Statement of Facts is codified at 42 U.S.C. §1396a(1)(E) and §1396d(p). Section 1396a mandates that a state provide Medicare cost-sharing for qualified Medicare beneficiaries. Section 1396d defines "qualified Medicare beneficiary" and "Medicare cost-sharing." It defines Medicare cost-sharing as the cost of Medicare premiums, coinsurance, and deductibles. States pay for the Medicare cost-sharing incurred by QMBs.

The State of Delaware has promulgated regulations for the administration of the QMB program at DSSM 13444.

> 2. The Superior Court did not abuse its discretion when it dismissed Mr. Mazin's appeal on the basis of his Notice of Appeal.

The language of Mr. Mazin's Notice of Appeal was as follows:

DDHS, Ms. Boyle broke CDR 5301 and other lows and rules Mr. Water listed in his decision of Fair Hearing#1. Ms. Boyle broke FMMG v. III, 14245 and CDR 17300, 13520, 5405 5), 4003.

Mr. Steinberg of DMMA broke Federal Medicare and Medicaid Guide (FMMG) lows v. III, 12.425, 14731 and cod of Delaware Regulation (CDR) v. 5, 17300, 13520, 5405 5), 2), and 3)Lows.

There is no meaningful explanation of the terms "CDR," "FMMG," "Federal

6

Medicare and Medicaid Guide," or "cod of Delaware Regulation." There is no indication who Mr. Waters and Ms. Boyle are, or what Fair Hearing#1 is. There is simply no coherent recitation of the grounds for the appeal. The Superior Court acted well within the bounds of reason and complied with recognized rules of law or practice when it dismissed Mr. Mazin's appeal. *See Lilly v. State,* 649 A.2d 1055, 1059 (Del. 1994) (quoting *Firestone Tire & Rubber Co. v. Adams,* 541 A.2d 567, 570 (Del. 1988)).

Moreover, a review of the documents filed in the Appendix to the Opening Brief suggests that the Superior Court properly dismissed the case even based upon the documents Mr. Mazin filed. Nowhere in his Opening Brief does Mr. Mazin ever challenge the finding made by the Social Security Administration that his income exceeds the applicable SSI limit. 20 C.F.R. §435.120, 20 C.F.R. §§416.260-269. He verified the receipt of a monthly pension in the amount of $124.78 and a monthly payment under Title II of the Social Security Act of $529.00. A-41, 47. Finally, nowhere does he challenge the finding made by the Social Security Administration that the factors specified in 20 C.F.R. §416.265 do not apply in his case. These collective findings are the basis for his termination from the 1619(b) Medicaid program.

*8*

## CONCLUSION

For these reasons, the Department of Health and Social Services respectfully asks that the Superior Court dismissal be upheld.


STATE OF DELAWARE
DEPARTMENT OF JUSTICE


/s/ A. Ann Woolfolk
A. Ann Woolfolk, I.D. No. 2642
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Fl.
Wilmington, DE 19801
(302) 577-8400

Attorney for Appellees

Dated:   December 6, 2006

*Recieved at* $08/08/06$

*9*

**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

**SHARON D. AGNEW**
PROTHONOTARY, NEW CASTLE COUNTY

NEW CASTLE COUNTY  COURT HOUSE
500 N. KING STREET
LOWER LEVEL 1, SUITE 500
WILMINGTON, DE  19801-3746
(302) 255-0800

JUDGMENT DEPARTMENT
500 N. KING STREET
1ST FLOOR, SUITE 1500
WILMINGTON, DE 19801-3704
(302) 255-0556

August 31, 2006

Mr. Mikhail Mazin
8314 Society Drive
Claymont, DE 19703

RE:    Civil Action No. 06A-08-001 CLS    *Judge Scott*
       Mikhail Mazin vs. DDHS, et al

Dear Mr. Mazin:

        Your petition to proceed in forma pauperis has been granted, however, your case
has been dismissed by the assigned Judge for the reasons stated in the order.

        Copies of the Court's orders are enclosed for your records.

                                        Very truly yours,

                                        Sharon Agnew

                                        Sharon Agnew
                                        Prothonotary

SA/sts

Enclosures

*10*

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| **Mikhail Mzin** | ) | |
|  | ) | |
| **vs.** | ) | **C.A. No. 06A-08-001 CLS** |
|  | ) | |
| **DDHS, Ms. Boyle** | ) | |
| **and Mr. Steinberg of DMMA** | ) | |

## *ORDER UPON INITIAL REVIEW OF COMPLAINT*

The Court having reviewed the complaint:

1.  ___✓___  IT IS ORDERED that the complaint is **DISMISSED** because:

        ____ The complaint was factually frivolous

        ____ The complaint was legally frivolous

        ____ The complaint was malicious.

        ____ It plainly appears from the face of the complaint that the plaintiff is not entitled to relief.

For the following reasons: _the petition fails to set forth facts and related grounds to understand what violation occurred or what relief should be granted_

Service of process shall not issue.

2. ____ The complaint is **NOT DISMISSED** and service of process shall issue.

**IT IS SO ORDERED.**

_____ J.

DATED: _8-29-06_

FILED PROTHONOTARY

2006 AUG 29  PM 4:49

*11*

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| **Mikhail Mazin** | ) | |
| | ) | |
| **vs.** | ) | **C.A. No. 06A-08-001 CLS** |
| | ) | |
| **DDHS, Ms. Boyle** | ) | |
| **and Mr. Steinberg of DMMA** | ) | |

## ORDER ON APPLICATION TO PROCEED
### *IN FORMA PAUPERIS*

The Court having considered the application to proceed *in forma pauperis* and the affidavit filed in connection therewith,

**IT IS ORDERED**

_____  The application is **GRANTED**. The applicant shall:

_____  Pay no fees or court costs: or

_____  Pay certain fees and court costs; namely: _____

_____

_____

_____  Pay such fees and court costs:

_____  By _____

$_____ per month

The complaint shall be filed.

_____  The application is **DENIED**. The filing fee of $_____ is due (not less than 15 calendar days from the date of notice). If not paid by then, the complaint will be dismissed.

_____ J.

DATED:  _8-15-05_

/2

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

Mikhail Mazin

VS.

DDHS, Ms. Boyle
and
Mr. Steinberg of DMMA

)
)
)
)
)
)
)
)
)

Civil Action No.

### NOTICE OF APPEAL

The party making this appeal is _____ M. Mazin _____

Plaintiff, before the _____ Superior Court _____

The appeal is from the _ DDHS, Ms. Boyle, Mr. Steinberg of DMMA

Board's decision dated _ Jul 10 2006. The grounds for the appeal are as follows:

DDHS, Ms. Boyle broke CDR 5301 and other lows and rules Mr. Water listed in his Decision of Fair Hearing #1. Ms. Boyle broke also FMMG v. III, 14245 and CDR 17300, 13520, 5405 5), 4003.

Mr. Steinberg of DMMA broke Federal Medicare and Medicaid Guide (FMMG) lows v. III, 14,245, 14731 and Cod of Delaware Regulation (CDR) v.5, 17300, 13520, 5405 5), 2), and 3) Lows.


The appeal is being taken to the Superior Court of the State of Delaware in and for New Castle

County.

_____
                    Signature
Address _____
8314 Society DR
Claymont, DE 19703
Phone Number (302) 529-7792

Dated: _____



The Delaware Code (31 Del. C. 520) provides for judicial   *13*
review of hearing decisions.  In order to have a review of the
decision expressed below in Court, a notice of appeal must be
filed with the clerk (Prothonotary) of the Superior Court
within 30 days of the date of the decision. An appeal may
result in a reversal of the decision.  Readers are directed to
notify the DSS Hearing Office, P.O. Box 906, New Castle, DE 19720 of any
formal   errors   in   the   text   so   that   corrections   may   be   made.

/
**DELAWARE DEPARTMENT OF HEALTH AND SOCIAL SERVICES**
**DIVISION OF MEDICAID AND MEDICAL ASSISTANCE**

In re:                                                           DCIS No.:
       Mikhail Mazin                                             9000008090

Appearances: Mikhail Mazin, pro se, Appellant
             Lidia Hofmann-Delbor, Translator

             Victoria Lynam, Division of Medicaid and Medical Assistance,
              Presenter
             Denise Boyle, Witness

I

By notice dated February 3, 2006 the Department of Health and Social
Services proposed to terminate the appellant's Medicaid Program coverage
after February 28, 2006.  [Exhibit # 1]

On February 22, 2006 a timely request for a fair hearing was received from
the appellant; benefits were reinstated pursuant to §5308 of the Division
of Social Services Manual.  [Exhibit # 2]

The date of a fair hearing scheduled for March 20, 2006 was changed at the
appellant's request.  The hearing was conducted on April 25, 2006 at the
Lewis Building at the Department of Health and Social Services in New
Castle.

This is the decision resulting from that hearing.

II

The fundamental issue for this hearing is the appellant's complaint that
he was not given an adequate advance notice of the reason for the action
proposed to discontinue his Medicaid Program coverage.

The proposed action to discontinue the appellant's Medicaid is announced
in the February 3, 2006 notice.  [Exhibit # 1]

I find that, while the notice is in writing and was sent to the appellant
in advance of the proposed action, it lacks a citation to any regulatory
or legal authority and does not provide the appellant with a detailed,
individualized explanation of the reason why the Division of Medicaid and
Medical Services has decided to discontinue his Medicaid Program
assistance.

The lack of a citation to a rule that supports the action is reversible error under a 1985 order of the United States District Court for the District of Delaware.

The absence of a citation in the February 3, 2006 notice deprives the appellant of the adequate notice required by due process. "Due process requires that claimants facing termination of public assistance benefits must be given 'adequate notice detailing the reasons for a proposed termination.'" *Ortiz v. Eichler*, 794 F2d 889,892 (3d Cir. 1986) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). "Such notice is necessary to protect claimants against proposed agency action 'resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.'" *Id*.

The Department of Health and Social Services was enjoined by the Court from terminating Medicaid Program benefits without an adequate notice that cites to the regulation supporting the action being taken and provides an individualized explanation of the reason for the action the notice announces.

The Delaware rules at §5301 of the Division of Social Services Manual incorporate the provisions of the Court's order.

The appellant specifically and repeatedly asserts - and I find - that the Department is obligated to give him and did not give him a comprehensive explanation of the reason for the action to terminate his Medicaid Program coverage after February 28, 2006.

The Department is obligated to give him an adequate advance notice of the proposed action to terminate his Medicaid Program coverage.

Based on the testimony and documentary evidence received for the hearing I find that the Department did not give the appellant the notice required by the Court's order and by the rules.

Therefore, the decision to discontinue the appellant's Medicaid Program coverage after February 28, 2006 will not be sustained.

The February 3, 2006 notice is not legally sufficient to close the appellant's Medicaid case.   This is because it does not cite any rule authorizing the action it announces.   It lists "conditions" that the State thinks the appellant needs to meet and does not meet but does not say why the action is being taken.

Since the notice does not comply with the rule at §5301 DSSM, it does not have legal effect.

Therefore, the decision to terminate appellant's Medicaid after February 28, 2006 is reversed.

Date: April 26, 2006

ROGER WATERS
HEARING OFFICER

THE FOREGOING IS THE FINAL DECISION OF THE DIVISION OF MEDICAID AND MEDICAL ASSISTANCE

APR 2 7 2006

POSTED

RW
cc: Mikhail Mazin
    Victoria Lynam, DMMA

*16*

Division of Social Services

STATE OF DELAWARE
DIVISION OF SOCIAL SERVICES
F A I R  H E A R I N G  S U M M A R Y

FEB 2 7 2006

Office of Fair Hearings

February 23, 2006

CASE NAME: Mikhail Mazin                    DCIS NO: 9000008090
ADDRESS:      8314 Society Drive
                        Claymont, DE  19703

I.      CLIENT'S REASON FOR APPEAL:

R₄ (1)          _X_   Reduction of benefits

II.     ACTION TAKEN BY THE DIVISION:

            _X_   Prior notice sent February 3, 2006

            _X_   Action taken February 28, 2006 {Effective date of closing}

Mikhail Mazin was getting Medicaid because he was eligible under the 1619B Medicaid
Program. Mikhail Mazin was reported as over income for the 1619B program on January
20, 2006.                                                          *1 report of June 05*

On January 20, 2006 an application was sent to Mikhail Mazin to see if he would be
eligible for any other Medicaid Program. On February 3, 2006 the application was
received by the Division of Medicaid and Medical Assistance.

Mr. Mazin verified a work related pension of $124.78 gross per month from MBNA. He
also receives Social Security Title II in the gross amount of $529.00. Mr. Mazin is
Medicare eligible and has been on the state buy-in since July 1, 2005. His gross unearned
income is $653.78. He has been found technically and financially eligible for the
Qualified Medicare Beneficiaries program effective March 1, 2006.

 Notice was sent to Mikhail Mazin on February 3, 2006 that his 1619B Medicaid benefits
would end on February 28, 2006. On February 22, 2006 the request for a fair hearing was
received by the Medicaid office. Since the request was received within the timely notice
period Medicaid benefits have continued until the hearing.





# Notice About
# Your Medical Assistance

State of Delaware Division of Social Services

**February 3, 2006**

**Your Case #:**
9000008090

**Questions? Contact your Caseworker:**
D. BOYLE
POOL# 0031
153  E CHESTNUT HILL RD
ROBSCOTT BLDG.
NEWARK DE 19713
(302) 453-4124

**To:**   MIKHAIL MAZIN
8314    SOCIETY DR
CLAYMONT DE    19703

## Medical Assistance for the following people has CHANGED:

| Name | Start Date | End Date | Old Program | New Program |
|------|-----------|----------|-------------|-------------|
| Mikhail Mazin | March 1, 2006 | Ongoing | Medicaid | Medicare Beneficiary (QMB) |

You are changing to the Medicare Beneficiary (QMB) program. Under the Medicare Beneficiary (QMB) program, your Medicare premiums, coinsurance, and deductibles will be paid. You are not eligible for any other health care services.

**See the following page for the reasons why your Medical Assistance changed.**



**If you do not agree with this action, you have the right to a fair hearing. Read the last page of this notice to see how to ask for a fair hearing.**

*18*

## 17130  1619 (b) Eligibles

Disabled individuals* who lose their financial eligibility for SSI due to obtaining employment may continue to be eligible for Medicaid if:

- the individual continues to be blind or continues to have the disabling physical or mental impairment on the basis of which he was found to be eligible for SSI, <u>and</u>

- the individual, except for his earnings, continues to meet all non-disability-related requirements for eligibility for SSI, <u>and</u>

- the loss of Medicaid benefits would seriously inhibit his ability to continue employment, <u>and</u>

- the individual's earnings are not sufficient to allow him to provide for himself a reasonable equivalent of the benefits available under Medicaid.

*Effective May 1991, the age restriction was lifted.  1619(b)'s will <u>not</u> lose their Medicaid eligibility at age 65.

## 17130.1 Eligibility Determination

The SSI Medicaid Unit receives the names of these individuals via the State Data Exchange (SDX). They have a payment status code of "NO1" and code "C" in Medicaid eligibility field.

The "C" means - Federally administered Medicaid coverage should be continued regardless of payment status code.

SSA monitors 1619(b) clients to assure they still meet the eligibility criteria for the 1619(b) program. An annual Medicaid redetermination consists of obtaining verification from Social Security that the client is still 1619(b) eligible.



# United States Treasury 15-51/000     P 004,380,722

Check No.

2051 94689175

02 03 06  71  PHILADELPHIA, PA
2051 94689175 28045300 S1    2    P
Pay to
the order of     |..illlhl..l..lllnn..lll..ll..ll.....ll..ll.......ll.l..l.ll..l|    75    SOC SEC
                                                                                        FOR JAN
MIKHAIL MAZIN
8314 SOCIETY DR                                                                         $****529*00
CLAYMONT DE  19703-1704

REGIONAL DISBURSING OFFICER        VOID AFTER ONE YEAR
                                   198

⑆20515⑆    ⑈000000518⑈  94689175⑈  070206

Required Signature    (     )Phone #    Date   /   /    0816MB5    0120060015952790MMC077458
                                                        000016063

---

MBNA CORPORATION PENSION PLAN    The Northern Trust Company    70-2851
                                 Chicago, IL through Oakbrook Terrace, IL    719

| Check Number | Payable Date | Reference Number | TO Number | Check Plan |
|---|---|---|---|---|
| 0016952790 | 02-01-2006 | 000016063 | | 0616MB5 |

$*********124.78

This Amount:  *** ONE HUNDRED TWENTY FOUR DOLLARS AND 78/100 ***

Pay to the Order of:   MIKHAIL MAZIN

The Northern Trust Company
Not Individually but
Solely in its Representative Capacity

                                              Authorized Signature

⑈0015952790⑈  ⑆071923828⑆  000033138⑈        0

 The Delaware Code (31 Del. C. §520) provides for judicial review of hearing decisions. In order to have a review of this decision in Court, a notice of appeal must be filed with the clerk (Prothonotary) of the Superior Court within 30 days of the date of the decision. An appeal may result in a reversal of the decision. Readers are directed to notify the DSS Hearing Office, P.O. Box 906, New Castle, DE 19720 of any formal errors in the text so that corrections can be made.

## DELAWARE DEPARTMENT OF HEALTH AND SOCIAL SERVICES
## DIVISION OF MEDICAID AND MEDICAL ASSISTANCE

In re:                                                      DCIS No. 9000008090

    Mikail Mazin

Appearances:  Mikail Mazin, Appellant

                  Victoria Lynam, Social Services Senior Administrator, Division of Medicaid and Medical Assistance
                  Denise Boyle, Sr. Social Worker/Case Manager, Division of Medicaid and Medical Assistance

I.

Mikail Mazin ("Appellant") is appealing the decision to close his 1619(b) Medical Assistance and his subsequent enrollment in the Qualified Medicare Beneficiary ("QMB") program.

The Division of Medicaid and Medical Assistance ("DMMA") contends that Appellant is not eligible for medical assistance coverage because they have determined that he is receiving insurance coverage under the Medicare program. The Appellant was opened in the Qualified Medicare Beneficiary ("QMB") program.

II.

By notice dated February 3, 2006, DMMA sent the Appellant a Notice About Your Medical Assistance. (Exhibit 5)

On February 22, 2006, the Appellant filed a timely request for a fair hearing. (Exhibit 5)

On April 25, 2006, Hearing Officer Roger Waters conducted a hearing on the matter in New Castle, Delaware. (Exhibit 5).

On April 26, 2006, Hearing Officer Roger Water reversed DMMA's decision to terminate Appellant's Medical Assistance because the notice provided to the Appellant was not legally sufficient to close his case. The notice did not cite to a regulatory or legal authority or provide an

individualized explanation concerning why DMMA took action to close Appellant's Medical Assistance. (Exhibit 5).

By notice dated May 5, 2006, DMMA sent the Appellant a Notice about Your Medical Assistance. (Exhibit 3)

The Appellant filed a request for a fair hearing dated May 18, 2006. (Exhibit 2)

The Appellant was notified by certified letter dated June 2, 2006, that a fair hearing would be held on June 27, 2006. A hearing was held on that date in New Castle, Delaware. This is the decision resulting from that hearing.

III.

Pursuant to Delaware Social Services Manual ("DSSM") 13436, prior to 1981, some severely disabled individuals lost SSI and Medicaid due to employment. The loss of Medicaid often meant that the individuals could no longer afford their medical care and were forced to quit their jobs and go back on SSI to assure Medicaid coverage. An amendment to the Social Security Act, Section 1619(b) was passed to allow these individuals to retain their Medicaid coverage while they continued working. These clients are referred to as "1619(b)s." The Social Security Administration determines eligibility for this group. In this case, the Social Security Administration determined that as of February 18, 2006, the Appellant was no longer eligible to be enrolled in 1619(b) Medicaid.

DMMA testified that they became aware through the Social Security data exchange program that the Social Security Administration determined the Appellant was no longer eligible for the 1619(b) Medicaid program. The Appellant's Medicaid benefits closed; however, when DMMA closed Appellant's 1619(b) Medicaid, he was opened in the QMB program.

A Qualified Medicare Beneficiary must have countable income that does not exceed 100% of the official poverty line. (DSSM §17300.3) As this benefit is based solely on being entitled to Medicare and income, there are no deductions made for expenses. A QMB is someone who is entitled to hospital insurance benefits under Part A Medicare and whose income does not exceed the Federal Poverty Level. QMB's qualify for Medicaid to pay their Medicare Part A and B premiums, deductibles, and co-insurance expenses. They do not receive any Medicaid services. (DSSM §17300)

Although the Appellant expressed concern about the fact that Medicaid will no longer cover all of his prescription drug charges without the help of the previous 1619(b) Medicaid coverage, there is no exception in the regulations to allow the Appellant to continue qualifying for 1619(b) Medicaid once DMMA learns that he is no longer eligible for the program.

In addition, at the hearing, the Appellant expressed concern that he would not be able to obtain transportation to doctor's appointments in Philadelphia, Pennsylvania without Medicaid

coverage. However, the regulations do not provide an exception to allow continuing Medicaid coverage for this reason.

Finally, the Appellant asserted that the income eligibility rules at DSSM 4003 should be applied to his case to help him in qualifying for Medicaid. However, because the Social Security Administration has determined that the Appellant no longer qualifies for 1619(b) Medicaid, the regulations affecting the state's Medicaid plans now apply. Generally, once an individual starts receiving Medicare they are technically ineligible to receive any type of Medicaid. DSSM 16220.4. However, there are some exceptions to this rule including the Special Low Income Medicare Beneficiary ("SLMB") and Qualified Medicare Beneficiary ("QMB") programs. The QMB program provides more benefits than the SLMB program and an individual's income is taken into account when DMMA makes eligibility determinations. Although it may not appear on the face of the agency's decision that they did not consider the Appellant's income in making their decision,  a review of the possible alternative programs available reveals that the Appellant's income was considered in the decision to reduce the Appellant's benefits to the QMB program.

IV.

For these reasons, the decision of the Division of Medicaid and Medical Assistance to close Appellant's 1619(B) Medicaid and open him in the QMB program is AFFIRMED.

Date: July 7, 2006

MICHAEL L. STEINBERG
HEARING OFFICER

THE FOREGOING IS THE FINAL DECISION OF THE DIVISION
OF MEDICAID AND MEDICAL ASSISTANCE

JUL 1 0 2006

POSTED

MLS/vmd

cc:    Mikail Mazin
       Victoria Lynam, DMMA
       Denise Boyle, DMMA
       Kathleen Dougherty, DMMA

3

24



# Notice About
# Your Medical Assistance
State of Delaware Division of Social Services

May 5, 2006

Your Case #:
9000008090

Questions? Contact your Caseworker:
D. BOYLE
POOL# 0031
153  E CHESTNUT HILL RD
ROBSCOTT BLDG.
NEWARK DE 19713
(302) 453-4124

To:    MIKHAIL MAZIN
       8314    SOCIETY DR
       CLAYMONT DE    19703

Medical Assistance for the following people has CHANGED:

| Name | Start Date | End Date | Old Program | New Program |
|------|-----------|----------|-------------|-------------|
| Mikhail Mazin | June 1, 2006 | Ongoing | Medicaid | Medicare Beneficiary (QMB) |

You are changing to the Medicare Beneficiary (QMB) program. Under the Medicare Beneficiary (QMB) program, your Medicare premiums, coinsurance, and deductibles will be paid. You are not eligible for any other health care services.

**Comments:**

The Social Security Administration has reported that you are no longer eligible for the 1619b program. Please contact the Social Security Administration for further explanation.

The rules we used to take this action are : 17130, 17130.1 DSSM

**See the following page for the reasons why your Medical Assistance changed.**



**5924**                     **Medicaid**                   1405   4-18-2006

(PubLNo 105-33) restored Medicaid coverage for certain children who did not meet the new definition of disabled created by Sec. 211(a) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PubLNo 104-193), commonly known as welfare reform law. The letter informs state Medicaid directors about how to identify these children electronically and when this information will be available. The Social Security Administration (SSA) has agreed to provide to the states electronic lists of children who no longer meet the definition of disabled and have exhausted SSA's administrative appeal process or never appealed their original decision. These listings will contain unique identifiers for these children as well as the diary due dates for the next scheduled disability redetermination.

*HCFA Letter to State Medicaid Directors*, Oct. 2, 1998. [The letter was reported at ¶ 50,042.]

Certain disabled children became ineligible for Supplemental Security Income (SSI) because of the change in disability definition of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PubLNo 104-193). Section 4913 of the Balanced Budget Act of 1997 (PubLNo 105-33) (BBA) assures that children who were receiving SSI on Aug. 22, 1996 and who, but for the new definition of disability, would continue to be eligible for Medicaid. Those who qualify for this eligibility are

deemed mandatory categorically needy individuals; the BBA provision was effective July 1, 1997.

*State Medicaid Manual*, HCFA Pub. 43, Transmittal No. 71, May 1, 1998. [The transmittal was reported at ¶ 46,315.]

HCFA issued interim final rules implementing the childhood disability provisions of sections 211 and 212 of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PubLNo 104-193) that provide a new definition of disability for children (*i.e.*, individuals under age 18) claiming Supplemental Security Income (SSI) benefits. Under the new law, the definition of childhood disability is no longer linked to the definition of disability for adults, eliminating the "comparable severity" standard articulated in Sec. 1614(a)(3) of the Social Security Act. Under the new law, a child's impairment or combination of impairments must cause more serious impairment-related limitations. Additionally, the interim final rules mandate changes to the evaluation process for children's disability claims and continuing disability reviews (CDRs) and require that disability redeterminations be performed for 18-year-olds eligible as children in the month before they attain age 18.

*Interim Final Rule*, 62 FR 6408, Feb. 11, 1997; Corrected at 62 FR 13537, Mar. 21, 1997 and at 62 FR 13733, Mar. 21, 1997. [This interim final rule was reported at ¶ 45,065.]

## [¶ 14,245] Mandatory Coverage of Medicare Beneficiaries

Medicaid plans in the 50 states and the District of Columbia must cover Qualified Medicare Beneficiaries (QMBs); such coverage is optional in the territories. QMBs are individuals who qualify for Medicare Part A, whose incomes do not exceed 100 percent of the federal poverty line, and whose resources do not exceed twice the SSI resource-eligibility standard. As explained under "Medicare Cost Sharing" at ¶ 14,731. Medicaid coverage of QMBs is limited to payment of their Medicare cost-sharing charges. [Soc. Sec. Act §1902(a)(10)(E)and §1905(p); *State Medicaid Manual*, Pub. 45,. §3490.]

The extent of assistance available to QMBs depends on their income and resources.

**QMB-only.** These beneficiaries are eligible for Medicare Part A, under either Soc. Sec. Act §1818 or §1818A, have incomes at or below 100 percent of FPL and assets less than twice the SSI limit, and do not qualify for Medicaid on any other basis. They receive payment of any Part A premiums and their Part B premiums. Medicaid also may contribute to their other cost sharing obligations, to the extent permitted by the state plan.

**QMB-Plus.** These individuals also have incomes at or below 100 percent of FPL and resources less than twice the limit for SSI disability benefits. In addition to the Medicare cost sharing, they are entitled to full Medicaid benefits, including prescription drugs through December 31, 2005.

**Specified Low-Income Medicare Beneficiaries (SLMBs).** A state's Medicaid program must cover Specified Low-Income Medicare Beneficiaries (SLMBs); these individuals are: entitled to Part A of Medicare with incomes between 100 percent and 120 percent of the federal poverty level and resources not exceeding twice the SSI limit. As explained under "Medicare Cost Sharing" at ¶ 14,731, Medicaid coverage of SLMBs is limited to payment of Medicare Part B premiums. Soc. Sec. Act §1902(a)(10)(E)(iii) and Soc. Sec. Act §1905(p); §3491.]

**Qualifying Individuals (QIs).** The BBA established two new mandatory eligibility groups of low-income Medicare beneficiaries called Qualifying Individuals (QIs). The first group of QIs, called QI-1s, are individuals who would be QMBs except that their income between 120 percent and 135 percent, of the federal poverty level (FPL). The second group of QIs had incomes between 135 percent and 175 percent of FPL. Unlike other Medicaid expenditures, spending for assistance to QIs was capped. Coverage was mandatory each year until the state reached the cap. The original allocations were made through 2002. Thereafter, coverage for QI-2s was not renewed.

¶ 14,245                                          ©2006, CCH INCORPORATED

cost-sharing expenses for low-income Medicare beneficiaries that met the income and asset criteria. Collectively, these individuals are referred to as "dual eligibles." The most common categories of dual eligibles are Qualified Medicare Beneficiaries (QMBs), Specified Low-Income Medicare Beneficiaries (SLMBs), and Qualifying Individuals (QIs). There are other categories of dual eligibles, however, who may receive help from the states to pay their Medicare costs.

Traditionally, Medicare had two basic forms of coverage: Part A, which pays for hospitalization costs, and Part B, which pays for physician services, lab and X-ray services, durable medical equipment, and outpatient and other services. Dual eligibles are individuals who are entitled to Medicare Part A and/or Part B and are eligible for some form of Medicaid benefit. [http:// www.cms.hhs.gov/DualEligible/.]

As of January 1, 2006, the effective date of the Medicare prescription drug benefit, many of these individuals also will be eligible for the low-income premium subsidy for Part D benefits. State Medicaid agencies will administer the eligibility determination process for the subsidy. Individuals eligible for Part D coverage will receive their prescription drug benefit through Medicare. Medicaid will cover only the medications included in hte state plan that are not covered by Medicare. [Soc. Sec. Act § 1935.]

### Qualified Medicare Beneficiaries (QMBs)

QMBs are individuals who are entitled to Medicare Part A, whose family incomes do not exceed 100 percent of the FPL and whose resources do not exceed twice the resource-eligibility standard for Supplemental Security Income (SSI). QMBs may be eligible for full Medicaid benefits or states may limit Medicaid eligibility to payment of Medicare Part A and Part B (supplementary medical insurance) premiums and Medicare cost sharing (deductibles and coinsurance) for Medicare services provided by Medicare providers. [Soc. Sec. Act § 1905(p).]

(a) **Medicaid only:** Eligible for Medicaid benefits either as categorically needy, or through optional coverage groups, such as medically needy or special income levels for long-term care, but do not meet the income or resource criteria for QMB or SLMB.

(b) **QMBs:** These are individuals entitled to Medicare Part A with incomes not exceeding 100 percent of the FPL and resources not exceeding twice the SSI limit. Eligibility for Medicaid is limited to payment of Medicare Part A and Part B premiums and Medicare deductibles and coinsurance for Medicare services provided by Medicare providers. The FFP equals the FMAP.

(c) **QMBs Plus:** These are the same individuals described in (b), above, who also are eligible for full Medicaid benefits for Medicaid services provided by Medicaid providers. The FFP          equals          the          FMAP.          [http://www.cms.hhs.gov/ DualEligible/02_DualEligibleCategories.asp.]

(d) **Specified Low-income Medicare Beneficiary** (SLMB): Entitled to Medicare Part A, income above 100% FPL but less than 120% FPL, and resources that do not exceed twice the SSI limit ($4,000 for an individual, and $6,000 for a couple).

(e) **Qualifying Individuals (QIs):** This group includes individuals entitled to Medicare Part A who would be QMBs except that their income is between 120 percent and 135 percent of the official FPL, with resources not exceeding twice the SSI limit, and who otherwise are not eligible for Medicaid. Their Medicaid benefits are limited to full payment of Medicare Part B premiums. (See ¶ 14,245) Payment of Part B premiums for this group has been authorized through September 30, 2007. [Soc. Sec. Act § 1933; PubLNo 109-91, Oct. 20, 2005.]

A second group of QIs, with incomes between 135 percent and 175 percent of FPL, was covered under the capped allocation until the end of 2002. The legislative authorization for FFP for this eligibility group expired at the end of 2002 and has not been renewed. [*CMS Letter to State Medicaid Directors*, SMDL No. 02-016, Nov. 6, 2002 ¶ 50,832.]

### Qualified Disabled and Working Individuals (QDWIs)

State Medicaid programs must cover QDWIs by paying their monthly Medicare Part A premiums (Medicare benefits lost because of return to work). QDWIs are disabled but employed individuals who are entitled to enroll in Medicare Part A under Soc. Sec. Act § 1818A. Their family incomes must not exceed 200 percent of the FPL; their resources must not exceed twice the SSI

**Medicare and Medicaid Guide**                                                                ¶ 14,731

**Hearing Summary** - Is a document prepared by an agency stating the reason(s) the action under appeal was taken and the information upon which the reasons are based. The summary may include documents to be used to decide the issue in question. Its purpose is to provide an appellant with information to prepare his/her case for the hearing.

**MCO** - Means a Managed Care Organization offering or providing medical services to recipients of medical assistance from the Division of Social Services and individual medical service providers of an MCO panel.

**Party** - A party to a hearing is a person or an administrative agency or other entity who has taken part in or is concerned with an action under appeal. A party may be composed of one or more individuals.

**Request for a Fair Hearing** - Any clear expression (oral or written) by the appellant or his/her authorized agent that (s)he wants to appeal a decision to a higher authority. Such request may be oral in the case of actions taken under the Food Stamp Program.

**State Presenter** - Is the agency employee advocating the State's case in a hearing.

#### 5001 Fair Hearings: General Purpose

An opportunity for a fair hearing will be provided, subject to the provisions of this section, to any individual requesting a hearing who is dissatisfied with a decision of the Division of Social Services, (i.e., suspension, reduction, overpayment, sanctions, delays, termination, etc.).

The purpose of a fair hearing is:

1) To afford all applicants and recipients an opportunity for an impartial, objective review of decisions, actions and/or delays in actions in programs administered by the Division;

2) To settle the issue(s) raised by the client in requesting the hearing;

3) To contribute to uniformity in the application of Departmental regulations;

4) To reveal aspects of Departmental procedures that are deficient or inequitable.

#### 5100 Legal Base

Public Assistance benefits are authorized under the various categorical programs established under Title 31 of the Delaware Code, under the Food Stamp Act, as amended, and under Titles XIX, XX and XXI of the Social Security Act and under regulations, not inconsistent with these laws promulgated by the State or federal governments.

#### 5200 Statewide Fair Hearings

Every applicant and recipient under any public assistance program administered by the Division will be informed in writing at the time of application and at the time of any action affecting their claim of their right to a fair hearing as provided under this section. Any notification conforming to the provisions of §5301 may be employed in giving this notice.

A summary fair hearing pamphlet is available to each applicant and each recipient, and will be displayed in each agency office. The policies and procedures for hearings contained herein are available to the public at each public and law library in the State and to other interested persons and agencies.

#### 5300 Notices

Written notice of an agency action to applicants and recipients, in addition to meeting the requirements of §5301 where applicable, will contain:

1) A statement of the client's right to a fair hearing as provided under this section.

2) The method by which (s)he may request a fair hearing.

3) A statement that (s)he may represent him/herself or that (s)he may be represented by counsel or by another person.

#### 5301 Adequate and Timely Notice to Recipients

In cases involving an agency's proposed or intended action to discontinue, terminate, suspend or reduce assistance described in these rules, or to change the manner or form of payment, no action may be taken unless the following conditions are met:

February 2005 DE
© 2005 Weil Publishing Co., Inc.
Reproduction Forbidden without Permission

1) Written notice must be provided to the client that is "adequate." Adequate means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request a fair hearing, and the circumstances under which assistance may be continued if a hearing is requested.

2) The written notice must be "timely." It must be mailed no later than ten (10) days before the date of action; that is, at least ten (10) days before the intended change would be effective. However, in the TANF program, when the Division of Social Services learns of facts indicating that assistance should be discontinued, suspended, terminated, or reduced because of the probable fraud of the recipient, and, where possible, such facts have been verified through secondary sources, notice of a grant adjustment is timely if mailed at least five (5) days before the action would become effective.

3) Each recipient shall be advised of his/her liability for repayment of benefits received while awaiting a fair hearing if the agency's decision is upheld. Monthly reporting households receiving benefits while awaiting a hearing will continue to report monthly until the end of the certification period or the resolution of the fair hearing, whichever is first. However, if DSS did not receive a monthly report form from the household by the extended filing date and the household admits that it did not submit such a monthly report, benefits will not be continued. If the fair hearing concerns termination for non- receipt of the monthly report by DSS, then a new complete monthly report for the month in question must be submitted by the household before benefits are continued. If the hearing request form is unclear whether the recipient wants continued benefits, they should be given.

If a recipient receives notice of termination due to his or her failure to submit a completed monthly report but subsequently submits one within the timely notice period, benefits will be provided based upon the information indicated on the report. If the information submitted on the monthly report results in a change in benefit amount or eligibility, another notice indicating the change and meeting the definition of an adequate notice must be provided. If a fair hearing is requested based upon this second notice, benefits must be continued at the level issued just prior to the notice of change.

The agency will provide continued benefits not later than five (5) working days from the day it received the household's request.

During the fair hearing period, the agency will adjust allotments to take into account reported changes except for the factor(s) on which the hearing is based.

4) Notices, including computer generated notices, must contain information needed for the claimant to determine from the notice alone the accuracy of the Division's action or intended action. At a minimum all notices will:

a) Indicate the action or proposed action to be taken (i.e., denial, reduction, or termination of assistance);

b) Provide citation(s) to the regulation(s) supporting the action being taken;

c) Provide a detailed individualized explanation of the reasons(s) for the action being taken which includes, in terms comprehensible to the claimant, an explanation of why the action is being taken and, if the action is being taken because of the claimant's failure to perform an act required by a regulation, an explanation of what the claimant was required by the regulation to do and why his or her actions fail to meet this standard; and

d) If calculations of income or resources are involved, set forth the calculations used by the agency, including any disregards or deductions used in the calculations, explanations of what income and/or resources the agency considers available to the claimant and the source or identity of these funds, and the relevant eligibility limits and maximum benefit payment levels for a family or assistance unit of the claimant's size.

**5302 Exceptions: TANF, GA, Medicaid, EA**

The agency may dispense with timely notice but will send adequate notice not later than the date of action when:

1) The agency has factual information confirming the death of the recipient or of the TANF payee when there is no relative available to serve as the new payee.

2) The recipient provides a clear written statement that assistance is no longer desired.

**5401 Hearings on Actions**

Upon request, a hearing shall be held regarding a State agency action, or failure to act with reasonable promptness, claims for financial, medical, or other assistance. The issues considered may include: undue delays in reaching decisions on eligibility or in issuing a benefit; refusal to consider a request for or undue delays in making an adjustment in a benefit; discontinuance, termination, suspension or reduction in assistance.

**5402 Hearings on Decisions**

A hearing may encompass decisions concerning:

1) Eligibility for financial or medical assistance in both initial and subsequent determinations;

2) The amount of economic or medical assistance or a change in the amount of the benefits;

3) The manner or form of the benefit including restricted or protective benefits;

4) A denial of a request for restoration of food stamp benefits lost more than ninety (90) days but less than one year prior to the request;

5) A decision of an MCO or other contractor that a medical service, treatment or test is not medically or otherwise necessary.

In addition,

6) At any time within a certification period, a household may dispute its current level of food stamp benefits; and

7) Food Stamp Program households may appeal decisions concerning expedited service.

**5403 Availability of Documents and Records**

Prior to the hearing, the appellant and his/her representative will have adequate opportunity to examine all documents and records to be used by the State agency or its agent at the hearing and to examine the claimant's case records. Requests by the appellant or his/her authorized representative for records and documents between the request for a hearing and the hearing should be directed to the office that maintains the records. If the office does not produce the records with five working

days, the requestor may ask the hearing officer to order the production of the records. There is no charge for copies of records and documents requested for a fair hearing. Documents relating to the case will be provided to a claimant or a household provided that confidential information is protected from release.

**5404 Appellant's Opportunities at a Hearing**

At the hearing the appellant or his/her representative will have the opportunity to:

1) Examine the case records and documents;

2) Present his/her case by him/herself or with the aid of a representative or counsel;

3) Bring witnesses;

4) Submit evidence to establish all pertinent facts and circumstances;

5) Advance any argument without interference;

6) Question or refute any testimony or evidence including the opportunity to confront and cross- examine adverse witnesses;

7) Be provided with interpreters or mechanical facilities to overcome language or other communication handicaps;

8) Withdraw his/her request for a hearing at any time.

**5405 Fair Hearing Procedures**

1) Hearing Officer's Introduction

The hearing officer will appropriately introduce the purpose of the meeting, the individuals and roles of those in attendance, and generally "set the stage" to assure the appellant of his/her right to be heard. In addition, (s)he will administer an oath to all witnesses and parties presenting testimony at the hearing. The hearing officer may, in his/her discretion, deal with any preliminary matters prior to beginning the case.

2) Manner of Proceeding

The hearing officer shall conduct the hearing in an informed fashion, consistent however with the procedural rights of the Department and the claimant to a courteous, fair, and fairly

conducted hearing consistent with due process and the requirements of the federal regulation. Parties will be courteous to each other and the hearing officer at all times and will obey the orders and rulings of the hearing officer.

3) Order of Presentation

a) Opening Remarks.

At the discretion of the hearing officer, the Department and the claimant will each be given an opportunity to make brief opening statements. An opening statement shall advise the hearing officer of the issues a party contends are a part of the case and shall succinctly summarize how the party's case will be proven. The hearing officer may, however, terminate or limit any opening statement which is unduly lengthy, repetitive or irrelevant.

b) The State will present its case first, unless, in the discretion of the hearing officer, the burden of persuasion rests on the other party (the claimant). This shall include the presentation of all witnesses to give testimony and all documents and other evidence which is admissible to prove its case. The other party may cross- examine each witness and may raise any legal basis for exclusion of any evidence at appropriate times during the hearing. Witnesses may be sequestered with the approval of the hearing officer.

c) The other party may present any witnesses to give testimony (and may testify his/herself) and other evidence' which is admissible to prove his/her/its case. However, such party need not present any evidence, but may rely upon the other party's failure to prove an essential element of his/her/its case. If evidence or testimony is presented, the other party shall have the opportunity to raise any legal basis for its exclusion and the opportunity to cross examine witnesses at the appropriate time during the proceeding.

d) If the second party has presented any evidence, the first party may, in the discretion of the hearing officer, present rebuttal evidence.

e) Closing Remarks.

The parties will be given an opportunity to briefly summarize their cases in closing remarks. Such closing remarks may summarize evidence and present legal argument for the adoption of one position against the adoption of the other. However, the hearing officer may limit or terminate unduly lengthy, repetitive, or irrelevant closing remarks.

4) Role of Hearing Officer

The hearing officer is in charge of running the hearing. He/she shall make all rulings on the admissibility of evidence as to how the proceedings are conducted. The hearing officer may question witnesses or direct the parties to produce evidence which he/she determines to be necessary for him/her to render a decision in the case. However, other than ensuring that the hearing is conducted fairly, the hearing officer is not permitted to assist either party in the presentation of his/her/its case.

5) Decisions of the Hearing Officer

Decisions of the State hearing officer will be based exclusively on evidence introduced at the hearing. The decision of the hearing officer will be issued not more than 90 days from the date the request for a fair hearing is filed or more than 30 days from the date the hearing is conducted. The decision of the hearing officer is the final decision of the agency. Judicial review, pursuant to 31 Del. C. 520, may be taken directly from the hearing officer's decision, within thirty (30) days of the decision.

**5406 Powers and Duties**

The hearing officer will:

1) Notify the parties of the date, time, and place of the hearing;

2) Take measures to avoid delays;

3) Ensure a fair and impartial proceeding;

4) Explain the hearing procedures;

5) Administer an oath or affirmation to all witnesses;

6) Ensure that all relevant issues are considered;

7) Maintain order and decorum;

8) Request, receive, and make part of the record all evidence determined to be necessary to decide the issues raised for the hearing;

9) Examine witnesses when necessary to develop the hearing record;

10) Regulate the conduct and course of the hearing to ensure an orderly hearing in a fashion consistent with due process;

February 2005 DE
© 2005 Weil Publishing Co., Inc.
Reproduction Forbidden without Permission

11) Order, where relevant and useful, an independent medical assessment from a source mutually satisfactory to the appellant and to the agency;

12) Make a record of the hearing;

13) Provide a final hearing decision to the parties.

## 5406.1 Authority of Hearing Officer

1) The hearing officer shall apply the State rules except to the extent they are in conflict with applicable federal regulations. The hearing officer shall be bound by rules regarding the date of implementation or effect of changes in federal statutes. The hearing officer shall be bound by applicable precedent of the following courts in the following order: U.S. Supreme Court, 3rd Circuit Court of Appeals, District Court for the District of Delaware, Delaware Supreme Court, Delaware Chancery Court, Superior Court. The hearing officer may consider decisions of other jurisdictions on questions that are not otherwise decided under State or federal rules.

2) The hearing officer must accept a decision made by another administrative agency including when such determination is a prerequisite for eligibility for a public benefit under a program administered by the State, i.e., if the Social Security Appeals Council has decided that a client is not eligible for SSI benefits, the hearing officer must abide by such decision. However, if the decision of the other agency is not final, the hearing officer shall have latitude to reserve the right to reconsider his decision in the event the other agency's decision is altered or reversed by a higher authority.

## 5407 Presenter's Role

The person presenting the case for the State or otherwise presenting the case as a proponent of or advocate for the action under appeal will:

1) Describe the action taken;

2) Conduct an examination of the witnesses;

3) Offer evidence which supports the action taken;

4) Respond to motions or requests from the opposing party and questions from the hearing officer;

5) Ensure that the claimant/appellant's case record is available if needed;

6) Question or refute testimony/evidence presented by the opposing party;

7) Make arrangements when necessary for translators for the deaf or for persons in need of translation services.

## 5500 Decisions by the Final Hearing Authority

Prompt, definitive, and final administrative action shall be taken within ninety (90) days from the date the appeal is filed, or, in the case of the Food Stamp Program, within sixty (60) days from the date the appeal is filed.

The decision of the hearing officer is binding on the Department of Health and Social Services.

The decision of the hearing officer shall be in writing and shall be sent to the appellant as soon as it is made. The written decision will identify supporting evidence and, for food stamp cases, will state whether benefits will be issued or terminated.

The decision of the hearing authority will comply with State and federal laws and regulations and will be based on the hearing record.

The written decision will contain at a minimum: a statement of the appellant's right to judicial review; the identity of the individual; a summary of evidence; findings of fact; a discussion or analysis of facts and arguments presented at the hearing and a discussion of how the applicable rules apply to the facts in the case and the conclusions derived therefrom; and the hearing officer's decision and/or order. The decision will cite applicable rules involved in reaching the decision. The writing will enable a reader to discern the path of the decision.

## 5501 Corrective Payments

When the hearing decision is favorable to the appellant, or when the agency decides in favor of the appellant prior to the hearing, the agency will promptly make corrective payments (retroactive to the date incorrect action was taken). For the purpose of this section, "prompt" means action must be taken to initiate the corrective payments or other remedy within five (5) business days of the date of the hearing decision. Benefits will be restored to food stamp households which are leaving a project area before their departure, whenever possible. If benefits are not restored prior to the household's departure, the agency shall forward an authorization for benefits to the household or new project area if this information is known.

When the hearing decision upholds the agency's action, a claim against the household for any overissuance will be prepared.

13000. Medical Assistance Program Medicaid Overview

**32**



### 13443 Home and Community Based Waivers

States may request "waivers of federal Medicaid requirements to provide needed medical and support services to people who need an institutional level of care but who can, with those additional services, remain in their own homes. Delaware currently has approved waivers. The waivers include:

• Elderly and Disabled Waiver;

• Developmental Disabilities and Mental Retardation Waiver;

• AIDS/HIV Waiver;

• Assisted Living Waiver.

### 13444 Qualified Medicare Beneficiaries (QMB)

Effective January 1990, Delaware began to pay Medicare premiums, co-insurance, and deductible amounts for Medicare beneficiaries with income that does not exceed 100% of poverty.

### 13445 Specified Low Income Medicare Beneficiaries (SLIMB)

Beginning January 1, 1993, Medicaid will pay the Medicare Part B premium for these individuals who have income that does not exceed 120% of poverty. They do not receive any Medicaid services.

### 13446 Qualified Disabled And Working Individuals (QDWI)

These are disabled individuals who lose premium-free part A Medicare benefits due to employment. Medicaid will pay the Part A premiums for these individuals who have income at or below 200% FPL.

### 13447 Qualifying Individuals

Two mandatory eligibility groups of low income Medicare beneficiaries were established by the Balanced Budget Act of 1997. The first group (QI-1s) have income between 120% and 135% of FPL and are eligible to have their Part B premiums paid by Medicaid. The second group (QI-2s) have income between 135% and 175% of FPL and receive a direct payment from Medicaid for the small portion of Part B premium that was transferred from Part A. The QI-2 was not reauthorized by Congress and terminated December 31, 2002.

### 13460 Poverty Level Groups

This section encompasses the mandatory categorically needy group of pregnant women, infants, and children. It also includes the adult expansion population and a family planning extension which were created under a Section 1115 Medicaid demonstration waiver.

### 13461 Pregnant Women, Infants And Children

The Omnibus Budget Reconciliation Act (OBRA) of 1986 established a categorically needy eligibility group of pregnant women, infants, and children. Coverage was expanded by OBRA '87 and the Medicare Catastrophic Coverage Act (MCAA) of 1988.

On October 1, 1992, Delaware expanded Medicaid coverage to low income children up to age 18. On July 1, 1993, coverage was expanded to cover children up to age 19.

### 13462 Adult Expansion Population

On May 17, 1995, CMS approved a Section 1115 Demonstration Project, entitled Diamond State Health Plan. This demonstration waiver extends Medicaid coverage to uninsured individuals age 19 or over with income at or below 100% of the FPL who are not categorically eligible.

### 13470 Breast and Cervical Cancer Group

Effective October 1, 2001, Delaware added an optional categorically needy group for uninsured women under age 65 who are in need of treatment for breast or cervical cancer.

### 13500 Allocation Of Medicaid Responsibilities

The Medicaid Unit has several functional groups of employees:

### 13510 Function Of Medicaid Units

The following 13500 sections describe the function of various Medicaid units.

### 13520 State Office Administrative Staff

The State Office Administrative Staff is responsible for ongoing program and policy issues to assure that the Medicaid program meets Federal and State rules and regulations. These responsibilities include:

A. developing and maintaining policy and procedure manuals for eligibility staff, medical providers, and administrative staff,

B. developing the annual Medicaid budget and tracking expenditures,

C. developing contracts with, and enrolling, medical providers,

D. determining appropriate service coverage issues,

E. researching, evaluating and reporting on fiscal and operational impacts of proposed Federal and State program initiatives,

© 2005 Weil Publishing Co., Inc.
Reproduction Forbidden without Permission

**16 5000 5100-319**

F. recommending and implementing fee structures,

G. monitoring fiscal agent activities,

H. auditing and performing utilization reviews of medical providers including imposing provider sanctions

I. monitoring the liability of other health insurance plans to pay for medical costs incurred by Medicaid recipients and recovering funds from these plans and the administration of a long term care estate recovery program,

J. planning and implementing new programs,

K. contracting with, and overseeing, other State and private agencies for auditing and monitory various facets of the Medicaid program as required by Federal law.

Distinct units within the State Office include:

A. the Administrative Support Unit which oversees:

1. the Surveillance and Utilization Review Unit (SUR)

2. the Budget/Data Management Unit (BDMU)

B. the Third Party Liability Unit (TPL)

C. the Claims Resolution and Medical Policy Unit

D. the Program Implementation Unit (PIU)

E. the Managed Care Unit

### 13530 Primary Case Worker Units

The Primary Case Workers determine eligibility for Medicaid groups other than nursing facilities, home and community based waivers, 30-day acute care hospital, and certain SSI-related groups.

Besides determining initial eligibility, these units also periodically redetermine eligibility. They are the primary contact with the Medicaid eligible population for resolving a wide variety of problems related to their own cases.

### 13540 Long-Term Care Units

The Long Term Care Units determine financial and medical eligibility for:

A. nursing home care

B. home and community-based services

C. 30 day inpatient hospital services.

These units also complete redeterminations of eligibility and the same type of problem resolution as the Primary Case Worker units.

### 13600 Medicaid Administrative Interaction

The following 13600 sections describe the interactions of various state and federal processes.

### 13610 Centers for Medicare and Medicaid Services (CMS)

The Centers for Medicare and Medicaid Services (CMS) is the Federal regulatory agency which governs the Medicaid program. This agency provides technical assistance to the states as well as overseeing the funds expended by the Federal government on the Medicaid program. CMS representatives monitor program activity, and carry approval rights over all program changes. As part of its responsibilities, CMS assures that regulations comply with laws governing the Medicaid program. This process is described below.

### 13620 Legislative And Administrative Process To Create Medicaid Programs

The Medical Assistance Program, like other government programs, is tightly regulated and operates daily using regulations and procedures that are based on a diversity of legislation and administrative policies. Because of these policies and legislation, Medicaid is a responsive, dynamic program. When the public raises issues of human rights and needs, the process that addresses those concerns is begun. Once laws are in place, an active system for updating and improving them is continually underway.

### 13630 Legislation To Law Process

In its most basic forms, the process works something like this:

Law A law or rule is established that indicates what the government's official position will be.

Regulation A regulation written from that law establishes what standards and other considerations will be followed upholding the law.

February 2005 DE
© 2005 Weil Publishing Co., Inc.
Reproduction Forbidden without Permission

10. Restitution made by any Aleut who was relocated by authority of the United States from his or her home village on the Pribilof Islands or the Aleutian Islands during World War II pursuant to Title II of P.L. 100- 383.

11. Payments made from the Agent Orange Settlement Fund or any other fund established pursuant to the settlement in the In Re Agent Orange product liability litigation, M.D.L. No. 381 (E.D.N.Y.).

12. Earned Income Tax Credits (EITC), including Advance EITC.

   Applicants:

   Disregard as a resource EITC payments received in the month of application or in the month preceding the month of application. Any remaining EITC amounts received before this period are a resource.

   Recipients:

   Disregard as a resource for the month in which the EITC is received and the following month. After this period, any remaining amounts are a resource.

13. Cash Value of Life Insurance Policies

14. The designated Education and Business Investment Account (EBIA) is excluded up to the $500,000 maximum. In addition to the current resource limit, Delaware's Temporary Assistance For Needy Families Program (TANF" and General Assistance (GA) Program families will be allowed to establish special Education and Business Investment Accounts (EBIA) of up to $5000.00, including interest.

Do not consider funds in such accounts as a resource for TANF, GA or Food Stamp purposes. Withdrawals from such accounts must be for approved purposes. If funds are withdrawn for non-approved purposes, count the money as a resource in the month received. Approved reasons for withdrawal of funds for self-sufficiency needs include education expenses, employment start-up needs, entrepreneurship, and to purchase a vehicle or home. If staff are unsure if the withdrawal meets an approved purpose, contact the policy unit for clarification.

Furthermore, a Saving for Education, Entrepreneurship and Down payment (SEED) accounts is considered an EBIA account and is excluded up to the $5000.00 limit.

#### Section 4002.6    Disposal of Real Property

Real property that is not used as a residence is excluded as a resource for a period not to exceed six months if the following conditions are met:

   1. The family is making a good faith effort to sell the property. This effort must be documented in the case record. Examples of acceptable documentation include a current newspaper sales advertisement, or a current sales contract with a real estate firm; and

2. The family signs Form 212, an agreement to dispose of the property and to repay the assistance received during the exemption period.

The amount of assistance that must be repaid after the property is sold is determined as follows:

   1. Compare the net proceeds of the sale plus the value of other countable resources available at the time the exemption period began to the $1,000 resource limit.

   2. If the amount is less than $1,000, there is no overpayment.

   3. If the amount is more than $1,000, the amount of the proceeds that is in excess of $1,000 is recovered as an overpayment. Note: The amount recovered cannot exceed the assistance that was received. Any proceeds in excess of the amount to be recovered are considered as an available resource to the family.

   4. If the property is not sold within six months, the assistance case must be closed. All the assistance payments are overpayments.

   5. If the assistance case is closed for some other reason during the six- month exemption period and the property has not been sold, all payments are overpayments.

   NOTE: The exemption period runs for six calendar months. If the assistance case closes and the client reapplies during this period, the exemption will continue for the remainder of the initial six- month period.

#### Section 4002.7    Transfer of Resources

Any individual who transfers a resource valued at more than $500 without fair market consideration is ineligible for TANF or GA for two (2) years from the date of the transfer.

#### Section 4003    Income

Income is any type of money payment that is of gain or benefit to a family. Income is either counted or excluded in the budgeting process.

A family's countable income less disregards is subtracted from the applicable standard of need to determine the amount of the assistance grant.

All countable income must be documented in the case record. (Information obtained through IEVS on UC and RSDI benefits is verified. No other documentation is needed in the case record. See DSSM 2013.5 regarding special processing instructions for applicants claiming RSDI benefits.)

#### Section 4003.1    Casual and Inconsequential Income

Income which is casual and inconsequential will not be considered as available income. Casual or inconsequential income is defined as income which is under $30 per recipient per calendar quarter, non-recurrent, and usually unpredictable, such as a holiday, birthday, or graduation gift. The income from a gift can be divided among the members of the budget group if

### 13430 SSI-Related Groups

These are individuals who are categorically related to the SSI Program.

### 13431 SSI Recipients

Any individual aged 65 years or over, blind, or permanently disabled (i.e. unable to engage in substantial gainful activity), receiving a benefit through the Supplemental Security Income program, is automatically eligible for Medicaid in Delaware.

Because Delaware covers all SSI beneficiaries, it is known as a "1634 state." Other states, commonly referred to as "209-b states," have more restrictive criteria for eligibility than the SSI program.

### 13432 Individuals Who Would Be SSI Recipients Except For The July, 1972 Increase In Old-Age, Survivors, and Disability Insurance (OASDI) Benefits

These are individuals who were receiving OASDI and would be a SSI recipient now if the July 1972 increase in OASDI were deducted from the individual's income.

### 13433 Recipients Of Mandatory State Supplementary Payments

When the Federal SSI program was implemented in 1974, states were mandated to provide supplemental payments to aged, blind and disabled individuals who would get less money under SSI than they got under the Old Age Assistance (OAA), Aid to the Blind (AB), and Aid to the Disabled (AD) programs formerly administered by the states. Delaware still has a few individuals who get mandatory state payments and they are eligible for Medicaid.

### 13434 Recipients Of Optional State Supplement Payments

Delaware provides a state supplement payment (SSP) to elderly and disabled SSI recipients in adult residential care arrangements and certain individuals in assisted living facilities. The amount of payment generally relates to the level of assistance provided in the living arrangement. These individuals qualify for Medicaid.

An optional state supplement of $5.00 is provided to individuals who lose SSI because of the receipt of Social Security Disability and are not yet eligible for Medicare.

### 13435 Pickle Amendment - Loss Of SSI Due To SSA Increases

Individuals who lose their SSI due to an increase in Social Security benefits are referred to as "Public Laws or "Pickle People. They continue

to be eligible for Medicaid as long as their combined income and resources, disregarding all SSA increases since they lost SSI, does not exceed the current SSI standard.

### 13436 1619(B) Eligibles

Prior to 1981, some severely disabled individuals lost SSI and Medicaid due to employment. The loss of Medicaid often meant that the individuals could no longer afford their medical care and were forced to quit their jobs and go back on SSI to assure Medicaid coverage. An amendment to the Social Security Act, Section 1619(b) was passed to allow these individuals to retain their Medicaid coverage while they continued working. These clients are referred to as "1619(b)s. The Social Security Administration determines eligibility for this group.

### 13437 Widows/Widowers (Age 60-64)

Individuals eligible under this category are over age sixty and under age 65. They lost SSI due to income drawn from a deceased spouse's SSA account. Medicaid coverage continues until individuals become eligible for Part A Medicare when they reach age 65. They must meet SSI income and resource limits. The widow/widower benefit is disregarded.

### 13438 Disabled Widows/Widowers (Age 50-59)

These are certain disabled widow(er)s who lose SSI/SSP because they began receiving Title II Social Security disabled widows benefits. They are deemed to be SSI recipients for Medicaid purposes until they are entitled to Medicare. They must meet SSI income and resource limits. The widow/widower benefit is disregarded.

### 13439 Adult Disabled Children

Individuals eligible under this category are over age 18 and became disabled before the age of 22. They lost SSI due to income drawn from the SSA account of an aged, blind disabled or deceased parent.

Eligibility is the same as for SSI except that the SSA benefit is disregarded for Medicaid eligibility.

### 13441 Disabled Children

Disabled children under age 19 who require an institutional level of care, but can be cared for cost-effectively at home, may be covered.

### 13442 Institutionalized Individuals

Institutionalized individuals may qualify for Medicaid based upon a higher income standard than that used for SSI individuals. States are allowed to use an income standard that is as much as 300% of the SSI uniform payment.

February 2005 DE
© 2005 Weil Publishing Co., Inc.
Reproduction Forbidden without Permission

**16220.2.2    Minor**

A minor is defined as an individual under age 18.

**16220.2.3    Emancipated Minor**

An emancipated minor (individual under age 18) can be determined categorically eligible under the poverty level program. Emancipation is established by court order, marriage or the establishment of a separate household. Emancipation must be documented in the case record. Examples include a copy of the court order, a copy of the marriage license, or wage stubs and rent receipts showing that the emancipated minor has established his or her own household. A minor can be emancipated within his or her parent's household if the minor is married or if the adult unmarried partner is living there and supporting the minor. In this case, obtain a written statement verifying the parents have relinquished responsibility for the minor. Once a determination of emancipation has been made, the individual is always considered emancipated.

**16220.3    Pregnancy**

The pregnant woman must have her pregnancy verified by a medical professional authorized under State law to make such a determination. A medical professional includes a physician, nurse, or lab technician. The pregnant woman may be single or married and may or may not have other children.

> NOTE: Pregnant women count as at least two family members in determining the budget unit size in all cases. If a pregnant woman is diagnosed with a multiple pregnancy, this must be verified to adjust the budget size accordingly.

**16220.4   Uninsured Requirement for Adult Expansion Population**

This is a separate technical eligibility requirement for the noncategorically related adults age 19 or over, including those who receive General Assistance. The individual must be uninsured. An uninsured individual is defined as an individual who does not have Medicare, Military Health Insurance for Active Duty, Retired Military, and their dependents, or other comprehensive health insurance. (See DSSM 16220.4.1) An adult who is entitled to or eligible to enroll in Medicare or who has Military Health Insurance for Active Duty, Retired Military, and their dependents, or who has any comprehensive health insurance, cannot be eligible for Medicaid as a non categorical adult under the demonstration waiver.

**16220.4.1    Definition of Comprehensive Health Insurance**

A benefit package comparable in scope to the "basic" benefit package required by the State of Delaware's Small Employer Health Insurance Act at

Title 18, Chapter 72 of the Delaware Code. This package covers hospital and physician services as well as laboratory and radiology services. The term "comprehensive" does not mean coverage for benefits normally referred to as "optional," e.g., prescription drugs.

**16220.5   Enrollment in Managed Care - Special Requirement for Adult Expansion Population**

Enrollment in a Diamond State Health Plan or Diamond State Partners MCO is a separate technical eligibility requirement for the non categorically related adults including adults who are receiving General Assistance. The adult must join a MCO in order for Medicaid coverage to begin. The adult, if otherwise eligible, cannot receive Medicaid coverage until he or she is enrolled in a Diamond State Health Plan or Diamond State Partners MCO.

**16230    Financial Eligibility**

Countable Income is earned or unearned income from which certain disregards (if applicable) have been deducted. Determine eligibility prospectively based on the best estimate of income and circumstances that will exist in the month for which the eligibility determination is being made. Changes in income are budgeted prospectively after verifying the information. Changes include, but are not limited to, changes in hourly rates, new jobs, changes from part to full time status (or vice versa), or loss of jobs. Do not budget prospectively changes in income due solely to things such as an extra pay cycle, bonus pay, and overtime or holiday pay. Convert income per time period to a monthly income figure by using the following conversion factors:

| Income Period | Conversion Factor |
|---|---|
| Weekly | 4.33 |
| Bi-weekly | 2.16 |
| Semi-monthly | 2 |

Accept the individual's declaration on management when there is no reported income.

Resources are not counted in the poverty level related programs.

**16230.1    Earned Income**

Earned income is the money an individual receives in return for work he or she performs. Earned income includes wages, salaries, tips, commissions, severance pay, self employment income, farming, roomer/boarder income.

**16230.1.1    Wages**

Wages are gross earnings paid to the employee before deductions for taxes, FICA, insurance, etc. Count

(d) The child would, except for the disability determination described in (c), continue to be paid SSI.

A child, who was not receiving SSI on August 22, 1996, is not protected by Section 4913. A child who loses SSI after August 22, 1996, for a nondisability reson is also not protected by Section 4913. If either of these two situations occur, a redetermination of Medicaid eligibility for the child under another eligibility group will be done.

### 17170.2 Disability Determination

The redetermination of disability will follow the rules in 20 CFR 416.924-924e as in effect on April 1, 1996. A contractor who is competent to perform the redetermination of disability will be used.

### 17170.3 Continuing Disability Reviews

The rules in 20 CFR 416.994a as published on April 1, 1996 will be used with the following modifications to the frequency of review:

(a) Review disability after, at most, 18 months if medical improvement is expected.

(b) Review disability after, at most, 3 years if disability is not permanent but medical improvement cannot be predicted.

(c) Review disability after, at most, 7 years if disability is permanent.

A contractor who is competent to perform the continuing disability reviews will be used.

### 17170.4 Financial Eligibility

Follow the SSI income and resource standards and methodologies.

### 17170.5 Continued Eligibility

Medicaid eligibility for children covered under this provision continues until the earlier of:

a) the child reaches age 18

b) the child no longer meets the criteria of the SSI program for payment of benefits (other than the post August 22, 1996, definition of disability for children). A child who ceases to meet the non-disability SSI eligibility criteria can recover coverage under Section 4913 if the child again meets the non-disability SSI criteria. However, a determination that the child is no longer disabled under the pre-PRWORA disability criteria will permanently bar the child from protected coverage under Section 4913.

c) the child is not eligible under another Medicaid eligibility group.

### 17170.6 Redetermination of Eligibility

A redetermination of the non-disability criteria is required at least every 12 months.

### 17200 Disabled Children - Program Renamed (See 25000 Section)

### 17300 Qualified Medicare Beneficiaries

A Qualified Medicare Beneficiary (QMB) is someone who is entitled to hospital insurance benefits under Part A Medicare and whose income does not exceed the Federal Poverty Level. All resources of the applicant and spouse are excluded when determining eligibility.

QMB's qualify for Medicaid to pay their Medicare Part A and B premiums, deductibles, and co-insurance expenses. They do not receive any Medicaid services.

This category of eligibles is mandated for coverage by the Medicare Catastrophic Coverage Act of 1988 (MCCA). Delaware Medicaid implemented the program effective 1/1/90. The eligibility and benefits are not retroactive.

### 17300.1 Application Process

The individual and his spouse, if married, must complete an application and provide the necessary verifications before a determination of eligibility can be made.

### 17300.2 Medicare Entitlement

Applicants must be entitled to Medicare Part A.

### 17300.3 Financial Eligibility

A Qualified Medicare Beneficiary must have countable income that does not exceed 100% of the official poverty line. The revised poverty levels for QMB's with title II income (Social Security) will be effective April 1. If the QMB does not have title II income, the revised poverty levels will be effective February 1.

07 - 81

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS  Maziu, Mikhail R.

### DEFENDANTS  MICHAEL L. STEINBERG

**(b)** County of Residence of First Listed Plaintiff   New Castle
(EXCEPT IN U.S. PLAINTIFF CASES)

8314 Society DR., Claymont, DE 19703

County of Residence of First Listed Defendant   New Castle
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

(302) 529-7792

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☑ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☑ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 42 U.S.C. §1396a(1)(E)

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE                    DOCKET NUMBER

DATE  February 13, 2007

SIGNATURE OF ATTORNEY OF RECORD

Mikhail Maziy

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 07-81 _____

# ACKNOWLEDGMENT
## OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 2 _____ COPIES OF AO FORM 85.

2/13/07
(Date forms issued)

Mikhail Maziu
(Signature of Party or their Representative)

(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action